UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Elliot Holly,                                    Civil No. 04-1489 (JMR/FLN)

    Plaintiff,

v.                                               **ORDER AND REPORT AND RECOMMENDATION**

Amy Anderson, Deborah Konieska,
Tony Kaufenberg, Mike Smith, Sandi Davis,
Carl Haglund, and Sue Eccels,

    Defendants.

---

Elliot Holly, *pro se*.
Barbara Berg Windels for Defendants.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' motion to dismiss [#35] and Plaintiff's motion to appoint counsel [#44]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court orders that Plaintiff's motion [#44] be granted and recommends that Defendants' Motion [#35] be granted in part and denied in part.

**I.    PROCEDURAL HISTORY**

In 2004, Plaintiff served two complaints in this action. The first complaint named Amy Anderson, Deborah Konieska, Tony Kaufenberg, Mike Smith, and Sandi Davis as defendants. The second complaint attempted to add two defendants, Carl Haglund and Sue Eccles, and also added new claims. The Court found that Holly intended this second complaint to supplement, not replace the original complaint. On September 15, 2004, the action was dismissed without prejudice. The Plaintiff appealed.

On December 4, 2006, the Eighth Circuit Court of Appeals reversed the District Court's

Order for dismissal and remanded the matter so that the Plaintiff could file an amended complaint. On January 3, 2007, the Court gave Plaintiff another opportunity to submit an amended complaint that complies with Local Rule 15.1. The Court provided that, if Holly did not timely file an amended complaint, "the action will proceed based on the claims set forth in Holly's original pleadings, which together will be treated as the operative complaint in this case." (*See* Docket # 33 at 4.) Holly did not file an amended complaint, but instead chose to proceed using his original two complaints.

Only three of the seven named Defendants have been served in this case, Deborah Konieska, Carl Haglund and Sue Eccels.[1] On February 15, 2007, the United States Marshals Service attempted to serve Amy Anderson, Tony Kaufenberg, Mike Smith and Sandi Davis, but could not do so because the Plaintiff had provided the wrong address.

The Court does not find it problematic that Defendants Amy Anderson, Tony Kaufenberg and Sandi Davis were not served because we addressed all of Plaintiff's allegations on the merits and recommend that all claims against these Defendants be dismissed. Pursuant to Federal Rule of Civil Procedure 4(m), the Court recommends dismissing the action without prejudice as to these Defendants. The Court does, however, recommend that more time be given to the Plaintiff to serve Mike Smith, against whom a claim survives this motion to dismiss. Nothing was posted on the docket regarding the Marshals' inability to serve these four Defendants until January 25, 2008 [#45].

---

[1] Defendants' motion to dismiss [#35] was filed only on behalf of the Defendants who were served, Sue Eccels, Carl Haglund, Deborah Konieska.

Until that time, the Plaintiff had no way of knowing why the four Defendants were not served. In his Response to Defendants' Motion to Dismiss [#41], the Plaintiff requested to know why the Marshals had not served the remaining Defendants. He should be given 30 days from the issuance of the District Court's Order on this Report and Recommendation to serve Mike Smith at the proper address.

## II. PLAINTIFF'S ALLEGATIONS.

The Plaintiff, Elliot Holly, is an indeterminately civilly committed patient at the Minnesota Sex Offender Program in Moose Lake, Minnesota. *See In the Matter of Elliot B. Holly*, No. C9-94-492, 1994 WL 396314, *1 (Minn. App. 1994).

Plaintiff alleges that on February 23, 2004, he and another patient were "hourseplaying" [sic] and the Plaintiff poked the other patient in the forehead with a pen. (Compl. ¶ 2.) During the horseplaying, the Plaintiff and the other patient fell to the ground and the other patient hit his head on a wooden chair. (*Id*.) Both men were given three days of cell bock restrictions for this altercation. (*Id*.)

Plaintiff alleges that on February 24, 2004, two staff members searched Plaintiff's room for a weapon. (*Id*.) During the search, a staff member allegedly told the Plaintiff to "sit his black ass down." (*Id*.) After this comment was allegedly made, the Plaintiff threatened to throw a chair if the two staff members did not leave his room. (*Id*.) Because Plaintiff made this threat, he was placed in "isolation lock-down" for 31 hours. (*Id*.)

Plaintiff alleges that on February 25, 2004, the Defendants took all of Plaintiff's property out of his room. (Compl. ¶ 3.) The individuals who removed the items determined that a pen removed from the cell was a weapon. (*Id*.) The Plaintiff alleges that the staff members determined the pen

3

was a weapon in retaliation for Plaintiff's threat to throw the chair on February 24, 2004. (*Id.*)

Plaintiff alleges that on February 25, 2004, he told a staff member at the 10:30 p.m. hour check that he was going to kill himself. (Compl. ¶ 5.) Plaintiff alleges that the staff members were angry because they had to monitor him that night. (*Id.*) At one point during the night, the Plaintiff alleges he told a staff member he was going to throw hot coffee and soup on himself at breakfast. (*Id.*) Plaintiff alleges that Defendant Deborah Konieska lied when she reported to other staff members that Plaintiff threatened to throw hot coffee and soup on the staff. (*Id.*) Plaintiff alleges that Defendants Deborah Konieska and Tony Kaufenberg created an unfair "behavioral program" on the basis of this lie. He alleges they did this in an attempt to transfer Plaintiff to a facility in the Department of Corrections. (*Id.*)

Plaintiff alleges that Defendant Mike Smith interviewed him on February 26, 2004. He alleges that Mike Smith lied when he told Plaintiff that he knew Plaintiff did not like his "behavioral program" and could help remove it from Plaintiff's file. (Compl. ¶ 6.) He alleges that Mike Smith did not let Plaintiff call his attorney; that Smith told him that he was really there to help the staff send the Plaintiff to prison and that the staff wanted to send Plaintiff back to prison because they did not like black people. (*Id.*)

Plaintiff alleges that on May 9, 2004, Defendants Amy Anderson and Sandi Davis lied to the hospital review board when they said that Plaintiff threatened to throw hot food on the staff on February 25, 2004. (Compl. ¶ 7.) He alleges they also lied when they told the board that Plaintiff had a weapon - a pen - on February 24, 2004. Plaintiff alleges that Anderson and Davis unfairly stated that Plaintiff violated his court stay by having a weapon. (*Id.*)

The Plaintiff alleges that he was placed in the Carlton County Jail on March 10, 2004.

4

(Compl. ¶ 8.) He claims that he was sent back to the sex offender facility in Moose Lake by Carlton County Judge Robert E. Macaulay on March 12, 2004.

Plaintiff claims that when he returned to the sex offender facility the Defendants placed him in isolation on "administrative lock-up" until they could get him another court date in order to send him back to the jail. (Compl. ¶ 9.) Plaintiff claims that Defendant Deborah Konieska said that the staff would do whatever it took for Plaintiff to violate his court stay. (*Id.*)

Plaintiff alleges that, during an unspecified period when he was placed in Administrative Isolation, he was not allowed to shower and was not given clean clothing for 11 days. (*Id.*) He also alleges that, during that same unspecified time period, he was not given food to eat for 8 days, and he was not given exercise time outside his cell. (*Id.*) He alleges that he was allowed to shower only after unspecified staff members started telling the Plaintiff that "he smells like a porch monkey nigger." (*Id.*)

Plaintiff alleges that, when he was in administrative lock-up, he was given only two hours to use a pen, he was not allowed to make legal phone calls, and he was not allowed to order legal pads. (Compl. ¶ 13.)

Plaintiff alleges that he was in administrative isolation for eight days before he received a hearing. (Compl. ¶ 14.) He alleges that he was in administrative isolation for three days before he was allowed any exercise. (*Id.*)

Plaintiff also alleges that he was not given all of his personal property back after the incidents at the end of February even though he signed a written statement swearing that he would not harm himself. (Compl. ¶ 10.)

The Plaintiff alleges that he his blood pressure has increased due to the Defendants' actions

and that he has suffered anxiety and extreme embarrassment   (Compl. ¶ 17.)

In his Second Complaint filed on June 4, 2004, Plaintiff alleges that Carl Haglund "assaulted" him. (Second Compl. ¶ 2.) Plaintiff alleges that Sue Eccls filed false criminal charges against him and caused him to be incarcerated. (*Id.*)[2]

### III.  STANDARD OF REVIEW

Defendants move to dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002).

Under Rule 8 of the Federal Rules of Civil Procedure, the Plaintiff must set forth in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has determined that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary

---

[2] In Plaintiff's Response to Defendants' Motion to Dismiss, he alleges new facts and allegations. The Court declines to consider these. *See* Fed. R. Civ. P. 12(b). The Plaintiff has already been allowed to proceed using two complaints rather than filing an amended complaint.

pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief about the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp.*, 127 S. Ct. at 1965 (internal citations omitted).

*Pro se* pleadings should be liberally construed, and are held to a less stringent standard when challenged by motions to dismiss. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Horsey v. Asher*, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Although it is to be liberally construed, a *pro se* complaint must still contain specific facts to support its conclusions. *Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir.1981).

## IV.  LEGAL ANALYSIS

### A. Plaintiff's damages claims against Defendants in their official capacities are barred by the Eleventh Amendment.

Plaintiff is suing the Defendants in both their official and individual capacities. A lawsuit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "[a]s such is no different from a suit against the state itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985). A suit by a private party seeking to recover damages to be paid by the state is barred by the Eleventh Amendment absent the state's consent to the suit. *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974). The State of Minnesota has not waived its immunity in this case. (Def. Br. at 14.) To the extent that Plaintiff seeks damages from Defendants in their official capacity, the

7

claims are barred by the Eleventh Amendment.

### B. Holly's Fifth Amendment claims must be dismissed.

Holly claims that Defendants' actions violated his Fifth Amendment rights. The Fifth Amendment applies only to actions taken by the federal government. *U.S. v. McClinton*, 815 F.2d 1242, 1244 n.3 (8th Cir. 1987). Here, the Plaintiff does not allege that the Defendants work for the federal government or that the Minnesota Sex Offender Program in Moose Lake, Minnesota, is a federal facility. Indeed, the Minnesota Sex Offender Program is run by the State. *See* Minn. Stat. § 246B.02. Accordingly, Plaintiff's claim that his Fifth Amendment rights have been violated must be dismissed.

### C. Holly's Eighth Amendment claims must be dismissed.

Plaintiff claims that Defendants' attempts to send him to jail amounted to cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment protection against cruel and unusual punishment applies only to those being punished for conviction of a crime. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). A challenge to the conditions of a civilly committed patient are analyzed under the Due Process Clause. *Youngberg v. Romeo*, 457 U.S, 307, 315-17 (1982). The Plaintiff was civilly committed under the Minn. Stat. § 246B.02 which provides that the Minnesota Sex Offender Program "shall provide care and treatment in secure treatment facilities to persons committed by the courts as sexual psychopathic personalities or sexually dangerous persons, or persons admitted there with the consent of the commissioner of human services." Therefore his claims are properly analyzed under the Due Process Clause, not the Eighth Amendment.

**D. Plaintiff states a Due Process claim against Defendants Konieska and Smith.**

**1. Plaintiff states a Due Process claim under the Fourteenth Amendment and pursuant to the Supreme Court's holding in *Bell v. Wolfish*, 441 U.S. 520 (1979).**

The Plaintiff alleges that sometime shortly after February 25, 2004, Defendant Deborah Konieska lied when she reported that Plaintiff threatened to throw hot coffee and hot soup on staff members. (Compl. ¶ 5.) He alleges that she did this in an attempt to transfer Plaintiff to a facility in the Department of Corrections. (*Id*.) He alleges that on February 26, 2004, Defendant Mike Smith told him in an interview that he was there to help the staff send the Plaintiff to prison. (Compl. ¶ 6.) Plaintiff alleges that he was transferred to the Carlton County Jail on March 10, 2004. (Compl. ¶ 8.) He claims that he was sent back to the sex offender facility on March 12, 2004 by Carlton County Judge Robert E. Macaulay. Plaintiff alleges that when he returned to the Moose Lake Facility, Defendant Deborah Konieska said that the staff would do whatever it took for Plaintiff to violate his court stay. (Compl. ¶ 9.) He also alleges that when he was in administrative isolation, he was not given food for eight days and was not allowed to exercise. (Compl. ¶ 10.)

A challenge to the conditions of a civilly committed patient are analyzed under the Due Process Clause. *Youngberg v. Romeo*, 457 U.S, 307, 315-17 (1982). In addressing such a claim, a court must first determine whether the officials in question acted with an intent to punish the patient. *Wolfish*, 441 U.S. at 561. If the court finds that the officials were not acting with an intent to punish, the court then determines whether the restrictions/practices constitute punishment, which requires an analysis of whether the restrictions/practices are rationally related to a legitimate governmental purpose and whether they appear excessive in relation to that purpose. *Id*.

Here, the Plaintiff has alleged that Defendants Konieska and Smith were acting with an intent to punish him. The Supreme Court has held, in part, that a sanction can be deemed to be punitive

if "it has historically been regarded as punishment." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963). Certainly, jail time has historically been regarded as punishment. Therefore, Plaintiff has properly stated a claim for violation of his due process rights. To the extent that Plaintiff claims the other Defendants violated his Due Process rights by inflicting punishment upon him, the claim is dismissed. Holly alleges that when he was on "administrative restriction," he was not given food for eight days and was not given exercise. However, Holly does not allege that any of the Defendants were personally involved in this claim. The claim is not therefore pleaded with sufficient specificity and must be dismissed. *See Cooper v. Schriro*, 189 F.3d 781, 783 (8th Cir. 1999) (holding that in order to state a claim for relief under sec. 1983, a complaint must explain how defendants are responsible for the alleged violations); *Frey v. City of Herculaneum,* 44 F.3d 667, 672 (8th Cir.1995) (complaint which did not indicate how defendants were involved in alleged violations and was conclusory failed to meet notice-pleading standard).

    **2. Plaintiff also states a claim for a Due Process violation under the standard set forth in *Youngberg v. Romeo*, 457 U.S. 307 (1982).**

The Court analyzes Plaintiff's claim under the *Youngberg* standard as well because in *Green v. Baron*, 879 F.2d 305 (8th Cir. 1989) the Eighth Circuit applied both the *Bell* standard and the *Youngberg* standard to a claim where a pretrial detainee alleged that the staff at a mental facility violated his civil rights. In *Youngberg,* the Supreme Court held that punishment of a civilly committed patient violates his due process rights where the court determines that the institution or officials did not exercise professional judgment. 457 U.S. at 321. Liability is imposed where the decision made by the professional is such a "substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. at 323.

10

Plaintiff claims that Defendant Konieska lied to other institution staff members that the Plaintiff threatened to throw hot liquids on staff in an attempt to send the Plaintiff to jail. He claimed that she also told Plaintiff that she would do what was necessary to send the Plaintiff back to jail. He also claimed that Defendant Smith said that he intended to help the other staff send the Plaintiff to jail. These allegations establish a claim that Defendants Konieska and Smith intended to punish the Plaintiff, an allegation that constitutes "a substantial departure from accepted professional judgment." *Youngberg*, 457 U.S. at 323.[3]

### E. Holly's claim that Defendants violated his Equal Protection rights under the Fourteenth Amendment must be dismissed.

Plaintiff alleges that on February 24, 2004, two staff members searched Plaintiff's room for a weapon. (*Id*.) During the search, a staff member allegedly told the Plaintiff to "sit his black ass down." (Compl. ¶ 2.) Plaintiff also alleges that when he was in administrative lockup in March after he returned from the jail, he was allowed to shower only after unspecified staff members started telling the Plaintiff that "he smells like a porch monkey nigger." (*Id*.) First, the Plaintiff fails to identify who made these statements and therefore fails to state an actionable claim. *See Cooper v. Shriro*, 189 F.3d at 783.

The claim also fails on the merits. "[T]he use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the fourteenth amendment." *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (holding that a security guards comment regarding the color of the Plaintiff's palms and a comment telling Plaintiff to smile so that

---

[3] As noted above, the Court is compelled to assume the truth of all factual allegations in the complaint when ruling on a motion to dismiss. The Court expresses no opinion regarding whether Plaintiff will be able to prove any of the allegations at trial.

he could be seen in the dark was offensive but did not rise to the level of a constitutional violation). The statements Plaintiff alleges were made are certainly offensive but do not rise to the level of a constitutional violation.

### F. Holly fails to state a claim that Defendants denied him his First Amendment right of access to the courts.

The Plaintiff alleges that Mike Smith did not let Plaintiff call his attorney during an interview. (Compl. ¶ 6.) Plaintiff also alleges that, when he was in "administrative lock-up", he was given only two hours to use a pen, he was not allowed to make legal phone calls, and he was not allowed to order legal pads. (Compl. ¶ 13.)

Even though the Plaintiff is a civilly committed sex offender and not a prisoner, the court may seek guidance from the cases addressing a prisoner's right to access the courts because, as courts have recognized, the confinement of civilly committed patients is similar to that of prisoners. *Morgan v. Rabun*, 128 F.3d 694, 697 (8th Cir. 1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). A number of courts have applied to civilly committed patients, the rule developed by the Supreme Court in connection with a prisoner's right to access the courts. *See Zigmund v. Foster*, 106 F.Supp.2d 352, 358 (D. Conn. 2000) (applying the rule from *Lewis v. Casey*, 518 U.S. 343, 351 (1996), a case involving prisoners' rights to access the courts to a civilly committed patient's claim that his right to access the courts was infringed); *Cornett v. Donovan*, 51 F.3d 894, 897-98 (9th Cir. 1995) (applying *Bounds v. Smith*, 430 U.S. 817, 828 (1977), a case involving prisoners' rights to access the courts to a civilly committed patient's claim that his right to access the courts was infringed); *Ward v. Kort*, 762 F.2d 856, 858-61 (10th Cir. 1985) (same).

In order to state a claim for a violation of a confined person's right to access the courts, the

Plaintiff must allege that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. That is, the Plaintiff must allege an actual injury. *Id*. The Plaintiff must show, for example, that his complaint was dismissed on a technicality for which he could not have known because the legal facilities at the prison were deficient. *Id*. Or that he could not even file a complaint because the legal facilities were deficient. *Id*.

In this case, Plaintiff alleges that he was not allowed to call his lawyer on one occasion and that while he was in "administrative lock-up," he was only given access to a pen for two hours and could not make legal phone calls or order legal pads. Plaintiff does not, however, allege that his inability to access his lawyer or legal materials prevented him from filing a claim or caused some other actual injury. Therefore Plaintiff's claim must be dismissed.

**G. Holly's procedural due process claim must be dismissed.**

Plaintiff alleges that he was in administrative isolation for eight days before he received a hearing. (Compl. ¶ 14.)

"[D]ue process rights of prisoners and pretrial detainees are not absolute; they are subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution." *Bell*, 441 U.S. at 554. In *Bell*, the Supreme Court held that pretrial detainees could not be punished without procedural due process protections, but it did qualify that rule: "[t]here is, of course, a *de minimus* level of imposition with which the Constitution is not concerned." *Id*. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1974)). In *Wilkerson v. Austin*, 545 U.S. 209, the Supreme Court held that an inmate's due process rights were violated when he was placed in solitary confinement indefinitely with a 30-day review. He was also disqualified for parole because he was

placed there. In solitary confinement, he had almost no human contact, exercise for one hour daily and control over almost every aspect of his life. The court held that his treatment constituted an "atypical and significant hardship" in which the inmate had a liberty interest. The court considered that nature of the conditions in relation to "the ordinary incidents of prison life," the duration of the placement and the ancillary effects of the placement.

In this case, the Plaintiff alleges that he was placed in "administrative isolation" for eight days without a hearing. However, Plaintiff also alleges that he had been in a fight with another prisoner and had "poked" him in the head with a pen. The allegations indicate that Plaintiff had some idea of why he was being placed in "administrative isolation" even if he did not agree with being confined there. The allegations are unclear, but it appears that Plaintiff was only placed there for eight days. The alleged facts to do not constitute an "atypical and significant" hardship. The alleged facts indicate that the institution had legitimate security concerns about the Plaintiff.

### H. The Defendants Konieska and Smith, against whom a claim survives, are not entitled to qualified immunity.

The Defendants contend that even if the Plaintiff has stated a claim, they are still entitled to qualified immunity. A government official is entitled to qualified immunity "from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In making this determination, a court must decide: (1) whether the facts alleged show the officer's conduct violated a constitutional right; and (2) if such a finding is made, whether the constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The Defendants in this case are not entitled to qualified immunity. Plaintiff's allegations, if proven, would establish that Defendants Konieska and Smith knowingly violated Plaintiff's

Fourteenth Amendment Due Process rights by deliberately attempting to send the Plaintiff to jail.

### I. Holly's state law claims must be dismissed.

Assuming, without deciding, that the Court will grant supplemental jurisdiction over Plaintiff's state law claims, those claims must be dismissed. In his Second Complaint, Plaintiff alleges the Defendant Carl Haglund "assaulted" him. The Plaintiff fails to allege any other facts. This allegation is conclusory and must be dismissed. Similarly, in his Second Complaint, the Plaintiff alleges that Defendant Sue Eccels "filed false criminal charges" against him. Again, Plaintiff does not allege any other facts with respect to this conclusory claim. Because the allegation is conclusory, it must be dismissed.

### J. Plaintiff has not demonstrated that he is entitled to injunctive relief.

Plaintiff requests a preliminary injunction. The Court considers the following factors in determining whether or not to grant a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). A preliminary injunction is a "drastic and extraordinary" remedy and should only issue in exceptional circumstances when "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id*. at 113. Holly requests that an "immediate" injunction be issued that: (1) "forbids Defendant from implementing their proposed new behavioral program;" (2) releases the Plaintiff from "administrative isolation;" (3) returning all of Plaintiff's personal property to him; and (4) prohibits the Defendants from engaging in "various other forms of harassment,

retaliation, and discrimination against the Plaintiff." (Compl. at 32.)

The Plaintiff has failed to demonstrate that the harm caused to him by these four conditions above is irreparable. As to the state of balance between the alleged harm to the Plaintiff and the injury that granting the injunction will inflict on other parties litigant, the Court does not find that the balance favors granting the injunction. The Moose Lake facility should not be kept from taking administrative steps to keep its facility safe. Indeed Plaintiff acknowledges in his Complaint that he was fighting with another Plaintiff before he was disciplined. The Plaintiff himself acknowledges in his allegations that he has disciplinary problems.

As to the third factor, the Plaintiff has not demonstrated that he will succeed on the merits; indeed, only one claim survives this motion to dismiss. Finally, the public interest weighs in favor of allowing the Moose Lake facility to continue to implement restrictions necessary to the safety and security of the institution.

**K. Holly's motion to appoint counsel [#44].**

In his motion to appoint counsel, Plaintiff contends that he has tried without success to find a lawyer to assist him with this case. He attaches some correspondence to his motion. Plaintiff fails to mention that in December of 2006, immediately after the case was returned from the Eighth Circuit, this Court sent the Plaintiff a letter referring him to the Volunteer Lawyers Network (VLN). The record is silent with respect to whether Plaintiff ever contacted the VLN as directed in the letter.

A court may "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The standard for appointment of counsel in such cases is whether both petitioner and the court would benefit from the assistance of counsel. *Johnson v. Williams*, 788

F.2d 1319, 1322 (8th Cir.1986) (quoting *Reynolds v. Foree*, 771 F.2d 1179, 1181 (8th Cir.1985) (per curiam)). "Factors bearing on this determination include: the factual complexity of the issues; the ability of an indigent to investigate the facts; the existence of conflicting testimony; the ability of an indigent to present his claim; and the complexity of the legal issues." *Nachtigall v. Class*, 48 F.3d 1076, 1082 (8th Cir. 1995).

In this case, only one of Plaintiff's claims withstands this Motion to Dismiss, the Plaintiff's due process claim alleging that he has been punished. The issue is: whether Defendants Smith and Konieska's actions in sending the Defendant to jail in March of 2004 were an improper attempt to punish the Plaintiff or whether they were justified in light of the Plaintiff's altercation with another inmate at the end of February. This claim involves factual issues and the ability of the Plaintiff to adequately investigate the facts is certainly compromised by his confinement. The claim also involves due process issues which would be better handled by a trained professional. The Court concludes that both the Court and the Plaintiff would benefit from the assistance of counsel. To the extent contemplated by Title 28, U.S.C., Section 1915(e), the Court hereby requests that the VLN find an attorney to represent Plaintiff.

## V. ORDER AND RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's motion to appoint counsel [#44] is **GRANTED** to the extent that, consistent with Title 28, U.S.C., Section 1915(e), counsel to be located by the VLN is requested to represent Plaintiff.

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to dismiss be **GRANTED in part** and **DENIED**

**in part [#35]**, as follows:

1.  To the extent that Plaintiff alleges a violation of his Due Process rights under the Fourteenth Amendment against Defendants Konieska and Smith, the Court recommends that the motion be **DENIED**.

2.  The Court recommends the motion be **GRANTED** in all other respects.

DATED: February 20, 2008             s/ *Franklin L. Noel*
                                                      FRANKLIN L. NOEL
                                                      United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 7, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.