UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Elliott Holly,                                                    Civil No. 04-1489 (JMR/FLN)

      Plaintiff,

  v.                                                                **REPORT AND RECOMMENDATION**

Deborah Konieska and Mike Smith,

      Defendants.

---

Michael C. Wilhelm for Plaintiff.
Barbara E. Berg Windels for Defendants.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 6, 2009, on Defendants' Motion for Summary Judgment [#129]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendants' Motion for Summary Judgment [#129] be DENIED.

### I.    PLAINTIFF'S ALLEGATIONS

Elliot Holly ("Plaintiff") is an indeterminately civilly committed patient at the Minnesota Sexual Psychopathic Personality Treatment Center ("MSPPTC") in Moose Lake, Minnesota. *See In the Matter of Elliot B. Holly*, No. C9-94-492, 1994 WL 396314, *1 (Minn. Ct. App. 1994).

Plaintiff alleges that Deborah Konieska and Mike Smith ("Defendants"), in their individual capacities, denied Plaintiff due process of law by subjecting him to unlawful punishment and by failing to exercise professional judgment in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. (Second Am. Compl. ¶ 1.) He also alleges that they

conspired to deny Plaintiff his due process rights in violation of 42 U.S.C. § 1985(3). *Id.* Plaintiff further asserts state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress against Defendant Konieska. *Id.*

All of the allegations set forth in the Complaint stem from incidents which occurred at MSPPTC from February to March of 2004. *Id.* Plaintiff alleges that Defendants violated his due process rights "by sending him to jail in March of 2004." *Id.* He further alleges that Defendant Konieska violated his due process rights "by denying him adequate food, clothing, personal hygiene, sanitation, and exercise" while he was in isolation at MSPPTC from February 26, 2004 to March 10, 2004. *Id.*

According to Plaintiff, Defendant Konieska was the Cell Block "O" Behavioral Analyst at MSPPTC and had "administrative control over, and direct operational supervision of, the care and treatment of Plaintiff" at MSPPTC during all pertinent times. (Second Am. Compl. ¶ 3.) Defendant Smith worked as a Criminal Investigator at MSPPTC and investigated the February 23, 2004 incident at MSPPTC during which Plaintiff poked another patient in the head with a pen. (*See* Second Am. Compl. ¶¶ 4, 8, 12.) Both men were given three days of cell bock restrictions for this altercation. (Second Am. Compl. ¶ 8.)

Plaintiff alleges that, on February 24, 2004, two staff members (whose names Plaintiff does not recall) searched Plaintiff's room for a weapon. (Second Am. Compl. ¶ 9.) During the search, one staff member allegedly told Plaintiff to "sit his black ass down." *Id*. After this comment was allegedly made, Plaintiff threatened to throw a chair. *Id*. Because Plaintiff made this threat, he was placed in "protective isolation" for 31 hours. *Id*.

On February 25, 2004, Plaintiff was released from protective isolation and found that staff

members "had removed all of Plaintiff's personal property from his room." (Second Am. Compl. ¶ 10.) The individuals who removed the items, Sherry Wayfield and a staff member named Colleen, determined that a pen removed from the cell was a weapon. *Id*. Plaintiff alleges that one of the staff members stated, "Well, we'll just have to call that a weapon since we don't have anything else to get you for." *Id*.

Also on February 25, 2004, Plaintiff told a staff member (whose name he does not recall) at approximately 10:30 P.M. that he was going to kill himself. (Second Am. Compl. ¶ 11.) Because of the threatened suicide, staff members were required to monitor Plaintiff overnight. *Id*. At one point during the night, Plaintiff alleges that he told a staff member he was going to throw hot coffee and soup on himself at breakfast. *Id*. Plaintiff alleges that Defendant Konieska wrote a report in which she stated that Plaintiff threatened to throw hot coffee and soup, not on himself but on staff members. *See id*. Plaintiff alleges that Defendant Konieska and staff member Tony Kaufenberg designed a behavioral program for Plaintiff based on this incident. *Id*.

Defendant Smith interviewed Plaintiff on February 26, 2004. (Second Am. Compl. ¶ 12.) Plaintiff alleges that he "agreed to speak to Defendant Smith on the condition that he be allowed to call his attorney," but that Defendant Smith informed him "that he would not be allowed to call his attorney." *Id.* Plaintiff alleges that Defendant Smith had initially stated that the meeting was to be about Plaintiff's behavioral program, however, Defendant Smith later informed Plaintiff that the meeting was not intended to discuss Plaintiff's behavioral program. *Id.* Defendant Smith also stated that MSPPTC staff "wanted to send Plaintiff to prison 'because they want you blacks out of the facility' and that he was there to help them send Plaintiff to prison." *Id.* Defendant Smith then began recording the conversation and proceeded to question Plaintiff about the February 23, 2004 pen

3

incident. *Id.*

Subsequently, on February 26, 2004, Plaintiff was placed in "protective isolation" until March 9, 2004, when he appeared at a Hospital Review Board meeting. (Second Am. Compl. ¶ 13.) During the time of his isolation, Plaintiff alleges that he "was not given any food, was not permitted to shower, was not given clean clothing, and was not permitted to exercise." *Id.* Upon Plaintiff's "information and belief, Defendant Konieska oversaw the conditions of Plaintiff's protective isolation during this period and was responsible for the decisions" to deprive Plaintiff of the aforementioned. *Id.* According to Plaintiff, he was "not given any food or permitted to shower or change into clean clothing until March 10, 2004." *Id.*

MSPPTC's policies in effect at the time required that "patients in protective isolation receive breakfast, lunch, and supper daily, and further mandated that patients in protective isolation receive one set of clean clothing daily" as well as "one half-hour each 24 hours for showers and exercise unless their behavior was threatening, out of control, or was inappropriate." (Second Am. Compl. ¶ 14.)

After the Hospital Review Board meeting on March 9, 2004, Plaintiff alleges that Defendant Konieska told Plaintiff: "I'm going to make sure you go to prison." (Second Am. Compl. ¶ 15.) Plaintiff further alleges that Defendant Konieska admitted to him that "the reason she had denied him food, clean clothing, showers, and exercise while he was in protective isolation was so that he would want to go to prison . . . ." *Id.*

Plaintiff was placed in the Carlton County Jail on March 10, 2004. (Second Am. Compl. ¶ 16.) Judge Robert E. Macaulay ordered his return to MSPPTC on March 12, 2004. *Id.* Plaintiff claims that, upon his return, Defendant Konieska related to Plaintiff that "he would remain in

4

protective isolation until they could get him another court date and told him that they did not want Plaintiff at MSPPTC." *Id.* Plaintiff claims that Defendant Konieska stated that she would do "'whatever it takes' for Plaintiff to violate his court stay so that he would be sent to prison." *Id.*

On May 17, 2004, Plaintiff was transferred from MSPPTC to the Minnesota Correctional Facility at Oak Park Heights, where he has since remained. (Second Am. Compl. ¶ 17.)

Plaintiff further claims that, as a result of Defendants' conduct, he has "experienced pain and suffering, physical sickness, severe emotional distress, physical and mental anguish, humiliation, embarrassment, high blood pressure and extreme anxiety." (Second Am. Compl. ¶ 20.)

## II.   STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the

benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

### III.     DISCUSSION

**GENUINE ISSUES OF MATERIAL FACT EXIST IN THIS CASE SUFFICIENT TO DEFEAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

    **A.     A reasonable jury could find that Defendants violated Plaintiff's due process rights.**

        1.     *Plaintiff states a due process claim which, if proven, satisfies the* Bell v. Wolfish *standard.*

A challenge to the conditions of confinement for a civilly committed patient is analyzed under the Due Process Clause of the United States Constitution. *See Youngberg v. Romeo*, 457 U.S, 307, 315-17 (1982). In addressing such a claim, a court must first determine whether the officials in question acted with intent to punish the patient. *Bell v. Wolfish*, 441 U.S. 520, 561 (1979). If the court finds that the officials were not acting with intent to punish, the court then determines whether the restrictions or practices constitute punishment, which requires an analysis of whether the restrictions or practices are rationally related to a legitimate governmental purpose and whether they

appear excessive in relation to that purpose. *Id*.

Plaintiff alleges that Defendant Konieska fabricated a report in which she stated that Plaintiff threatened to throw hot liquids on staff in order to subject him to punishment (*see* Second Am. Compl. ¶ 11) and that Defendant Konieska stated, on March 9, 2004, that she would make sure Plaintiff went to prison. (Second Am. Compl. ¶ 15.) Plaintiff also alleges that Defendant Smith told him in a meeting on February 26, 2004 that he was there to help MSPPTC staff send Plaintiff to prison as a result of his race. (*See* Second Am. Compl. ¶ 12.) Plaintiff was then transferred to the Carlton County Jail on March 10, 2004. (Second Am. Compl. ¶ 16.)

Here, Plaintiff has alleged that Defendants acted with intent to punish him. The Supreme Court has held, in part, that a sanction can be deemed to be punitive if "it has historically been regarded as punishment." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963). Certainly, jail time has been historically regarded as a form of punishment. Therefore, Plaintiff has properly stated a claim for a violation of his due process rights on this basis.[1]

2. *Plaintiff states a due process claim which, if proven, satisfies the* Youngberg v. Romeo *standard.*

This Court analyzes Plaintiff's claim under the *Youngberg* standard as well because, in *Green v. Baron*, 879 F.2d 305 (8th Cir. 1989), the Eighth Circuit applied both the *Bell* standard and the *Youngberg* standard to a case in which a pretrial detainee alleged that the staff at a mental facility violated his civil rights. In *Youngberg,* the Supreme Court held that punishment of a civilly committed patient violates his due process rights where the court determines that the institution or

---

[1]Plaintiff further alleges that Defendants unlawfully punished him by subjecting him to 46 days of isolation without justification between February 26, 2004 and April 14, 2004. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. 1, 24.) This allegation is not specifically set forth in the Second Amended Complaint. Because this Court finds that any intent on the part of Defendants to unlawfully subject Plaintiff to prison or jail time is sufficient to demonstrate a due process violation, the issue of the duration of isolation will not be addressed here.

officials did not exercise professional judgment. *Youngberg v. Romeo*, 457 U.S.307, 321 (1982). Liability is imposed where the decision made by the professional constitutes such a "substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. at 323.

Plaintiff claims that Defendants unlawfully attempted to send him to jail as a result of his race. He further claims that, while Defendant Smith said that he intended to help MSPPTC staff send Plaintiff to jail (Second Am. Compl. ¶ 12), Defendant Konieska told Plaintiff that she would "make sure" Plaintiff went to prison. (Second Am. Compl. ¶ 15.)

Additionally, Plaintiff asserts that Defendant Konieska deprived him of basic life necessities while in isolation. Plaintiff alleges that Defendant Konieska was responsible for determining Plaintiff's restrictions and length of breaks during his isolation. (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. 10-11 ("Pl.'s Mem.").)

Plaintiff argues that during his isolation, he was not provided "a meaningful opportunity for exercise," *Campbell v. Cauthron*, 623 F.2d 503, 507 (8th Cir. 1980), and that, on many days during his isolation, Plaintiff was not released from his isolation cell at all. (Pl.'s Mem. 17.) He further argues that, during his first 8 days of isolation, he was denied adequate food, clean clothes, toilet paper and showers (Pl.'s Mem. 30-31) and claims that Defendant Konieska stated that she wanted to make Plaintiff's isolation at MSPPTC "so unbearable that he would want to go to prison." *Id.* at 31.

These allegations establish, not only a claim that Defendants acted with intent to punish Plaintiff, potentially as a result of his race, but also demonstrate actions which, if proven, constitute

"a substantial departure from accepted professional judgment." *Youngberg*, 457 U.S. at 323.[2] Therefore, a reasonable jury could find that Defendants violated Plaintiff's due process rights.

**B.     Plaintiff's conspiracy claim is not barred.**

Defendants argue that the doctrine of intra-agency conspiracy bars Plaintiff's claim under 42 U.S.C. § 1985(3) because Defendants were both employees of the Minnesota Department of Human Services, State Operated Services (SOS) in 2004 because Smith's services were contracted for a year to SOS, which also operated MSPPTC. (Defs.' Reply Mem. to Pl.'s Mem. in Opp'n to Mot. for Summ. J. 12-13.)

"Although a corporation cannot conspire with itself, a claim may arise where individually named defendants act outside the scope of their employment or for personal reasons." *Boone v. Federal Exp. Corp.*, 59 F.3d 84, 87 (8th Cir. 1995). Here, any derogatory remarks or punishment of Plaintiff contrary to internal policy would fall outside the scope of Defendants' employment. Because Defendants' alleged statements potentially demonstrate a racial animus, there is a genuine issue of material fact as to Plaintiff's conspiracy claim.

**C.     Defendants are not entitled to qualified immunity.**

Defendants contend that they are entitled to qualified immunity. This argument was previously raised and rejected by this Court. (*See* Doc. No. 48.)

Government officials are entitled to qualified immunity "from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In making this

---

[2] As noted above, the Court is compelled to view all of the facts in the light most favorable to the non-moving party and to give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts when ruling on a motion for summary judgment. This Court expresses no opinion as to whether Plaintiff will be able to prove any of the allegations at trial.

determination, a court must decide: (1) whether the facts alleged show the officer's conduct violated a constitutional right; and (2) if such a finding is made, whether the constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Defendants in this case are not entitled to qualified immunity. Plaintiff's allegations, if proven, would establish that Defendants knowingly violated Plaintiff's clearly established Fourteenth Amendment Due Process rights by deliberately punishing him and conspiring to send him to jail, and by Defendant Konieska denying him the basic necessities of food, clothing and hygiene and exercise.

### D.     Plaintiff's state law claims against Defendant Konieska survive as well.

Assuming, without deciding, that the Court will grant supplemental jurisdiction over Plaintiff's state law claims, those claims must survive. In support of Count VIII: Intentional Infliction of Emotional Distress, Plaintiff alleges that Defendant Konieska's actions were "extreme and outrageous" and were either intentional or reckless, and "caused Plaintiff extreme emotional distress." (Second Am. Compl. ¶ 43.) In support of Count IX: Negligent Infliction of Emotional Distress, Plaintiff alleges the Defendant Konieska's conduct "subjected Plaintiff to a zone of danger of physical impact, causing Plaintiff to reasonably fear for his own safety and to suffer severe emotional distress with attendant physical manifestations." (Second Am. Compl. ¶ 46.) Plaintiff further claims that, as a result of this conduct, he has "experienced pain and suffering, physical sickness, severe emotional distress, physical and mental anguish, humiliation, embarrassment, high blood pressure and extreme anxiety." (Second Am. Compl. ¶ 20.)

If proven, a reasonable jury could find that Defendant Konieska's actions set forth in Plaintiff's Second Amended Complaint caused Plaintiff physical and emotional distress sufficient

to support such a finding on both counts.

When the record is viewed in the light most favorable to Plaintiff, genuine issues of material fact exist sufficient to survive summary judgment for Defendants. A reasonable jury could find that Defendant Konieska was responsible for failing to provide Plaintiff with food, clothing, hygiene and exercise, and that both Defendants unlawfully punished Plaintiff and conspired to discriminate against him on the basis of race, and thus violated Plaintiff's due process rights.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment [#129] be **DENIED.**

DATED: December 8, 2009  *s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 22, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **December 22, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.